UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 20-CR-55 (TFH) |
| : | |
| JACOB KYLE JORDAN, : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR BOND REVIEW

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia and undersigned counsel, respectfully submits this omnibus opposition to Defendant's "Emergency Motion for Bond Review" (hereinafter "Def. Motion") (Docket Entry 19) and "Supplement to Emergency Motion for Bond Review" (hereinafter "Def. Supp." (Docket Entry 21). As stated more fully below, Defendant has not demonstrated changed circumstances sufficient to warrant a reversal of this Court's detention order. Consequently, his motion should be denied.

### PROCEDURAL HISTORY

The United States orally moved for detention pending trial at Defendant's initial appearance on February 26, 2020. On February 27, 2020, a federal grand jury sitting in the District of Columbia returned an indictment charging Defendant with one count of Possession with the Intent to Distribute more than 500 grams of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), and one count of Possession of a Firearm in Furtherance of Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1). A detention hearing was held on February 28, 2020, at the conclusion of which, Magistrate Judge Meriweather ordered Defendant detained pending trial. (Docket Entry 13).

Defendant appealed that order to this Court on March 5, 2020, and the United States opposed. (Docket Entries 16, 17). On March 11, 2020, this Court heard oral argument and denied Defendant's motion for pretrial release on the grounds that he is a danger to the community. Minute Entry, March 11, 2020. On March 19, 2020, this Court continued Defendant's scheduled status conference pursuant to Chief Judge Howell's standing order. Minute Entry, March 19, 2020. That same day, Defendant filed the instant motion seeking pretrial release. (Docket 20).

## ARGUMENT

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A court may reconsider its decision regarding pretrial detention "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time and that has a material bearing on the issue" of whether there exist conditions for release that would "reasonably assure the appearance of such person as required." United States v. Bikundi, 73 F. Supp. 3d 51, 54 (D.D.C. 2014) (citing 18 U.S.C. § 3142(f)(2)(B); accord United States v. Moore, No. 13–330, 2014 WL 1273439, at *1 (D.D.C. Mar. 31, 2014)).

In this case, even in light of the outbreak of COVID-19 in the District of Columbia, there are no conditions, or combination of conditions, that will reasonably assure the safety of the community if Defendant is released pending trial. Notably absent from either Defendant's Emergency Motion, or his Supplement thereto, is any analysis to suggest that the proffered conditions of release—which have already been rejected by both Magistrate Judge Meriweather and this Court—are any more likely to ensure the safety of the community on March 23 than they

2

were on March 11. Moreover, the mere possibility of contracting COVID-19 inside DOC is not yet a change in circumstances that necessitates revisiting the initial detention order.

    **I.**    **The Bail Reform Act factors, considered by Magistrate Judge Meriweather and this Court remain in favor of detention.**

The United States requested Defendant's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E), because the crimes charged included the possession or use of a firearm, and 18 U.S.C. § 3142(f)(1)(C), because Defendant's maximum term of imprisonment exceeds ten years under the Controlled Substances Act.[1] Following separate hearings on the issue, Magistrate Judge Meriweather and this Court both agreed that there was no combination of conditions that would guarantee the safety of the community of Defendant was released. (Docket Entry 13); Minute Entry, March 11, 2020.[2]

In weighing Defendant's motion, this Court must consider the same statutory factors it has already considered: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community, and the risk of flight, which would be posed by the defendant's release. 18 U.S.C. § 3142(g). Respectfully, there has been no change in these factors, or the fact that – on balance – they weigh in favor of pretrial detention.

---

[1] As noted during oral argument, Defendant faces a mandatory-minimum sentence well in excess of 10 years.

[2] Both this Court and Magistrate Judge Meriweather determined that Defendant should be detained on dangerous grounds and did not determine whether Defendant should also be detained as a flight risk.

3

**II.     While the COVID-19 pandemic is dangerous, it is not a changed circumstance that necessitates reconsideration of bond.**

Defendant's emergency request for pretrial release is premature. While the risk of COVID-19 is real, Defendant does not provide a meaningful nexus between the virus and himself. Neither does Defendant offer evidence that anyone within the facilities operated by the D.C. Department of Corrections ("DOC") has contracted the virus. Instead, Defendant speculates that because Defendant is among the vulnerable population at heightened risk of contracting COVID-19, he must be released from custody. Def. Motion, at 3-5. Defendant has not offered an actual diagnosis, has not proffered medical records, and cannot even confirm that Defendant has any such medical condition. Def. Motion, at 4 n.2. Defendant relies instead on the triple-hearsay statements of biased witnesses and rank speculation of potential health problems, none of have been confirmed by Defendant, let alone a medical professional. Id.[3]

Similarly absent from Defendant's motion is any analysis addressing how his release to his apartment in Northwest DC will prevent his exposure to COVID-19. This is especially true, given the precautions being taken at DOC to prevent an outbreak of COVID-19 in their facilities. The United States Attorney's Office has consulted with DOC to obtain relevant information as to DOC's COVID-19 protocols, and is satisfied that DOC is handling the situation as well as it can – much the same as any other organization in the United States. Specifically, DOC has done the following to ensure the safety of its incarcerated population:

(1) banned all non-attorney visits to limit unnecessary exposure;

(2) implemented screening processes for all visitors and incoming inmates, including

---

[3] The representations in Defendant's motion are inconsistent with photographs displayed on Defendant's publicly-available Instagram page. Those photos show that Defendant is a fitness enthusiast and triathlete. Attachment One.

4

attorneys and staff; such screening includes assessing visitors and inmates for symptoms, sanitizing stations, etc.;

(3) if incoming residents at a DOC facility fail the screening process, they are given a mask and taken to medical to determine if they require further hospitalization or testing. Moreover, if there is concern that an inmate has COVID-19, the inmate will be placed into a single cell in a specialized unit, where the inmates only contacts are with medical staff, who will obtain COVID-19 testing within 3-4 days;

(4) DOC has implemented an incident command program, where each day, DOC units meet to discuss ongoing processes to combat the virus;

(5) DOC sends out daily reminders to its staff about taking preventative, prophylactic measures to avoid infection, such as washing hands, using sanitizer, etc.;

(6) DOC has constant meetings with the D.C. Department of Health to ensure its procedures meet both local and national standards, to include following updated recommendations of the Centers for Disease Control;

(7) DOC has continued to engage with the USAO and the local Public Defender Service to ensure continuity of operations;

(8) DOC checks and rechecks its ventilation system to ensure the air quality in the facilities;

(9) DOC is tracking and ordering additional cleaning and sanitation kits (for example, as of March 17, 2020, the D.C. jail had 55,200 bars of fresh soap), as well as protective gear;

(10) DOC is working with MPD in an attempt to limit the number of inmates coming into its facility at any given time; and

(11) DOC has the capacity to quarantine approximately 100 inmates, if necessary. This number is fluid, however, and is subject to change depending on circumstances.

While the United States shares Defendant's concerns over the health of DOC staff, and the inmates housed in their facilities, there is no evidence yet that the illness has endangered the lives of those within DOC facilities. Defendant's motion neither addresses nor analyzes DOC's COVID-19 protocol, or its implementation of specific precautions to protect inmates from exposure. Rather, Defendant relies on the conclusory opinion that DOC is unsafe and unable to control the virus. Def. Motion, at 3; Def. Supp., at 2. As support for his conclusory opinion, Defendant points to the fact that a single Deputy U.S. Marshal tested positive for COVID-19, and all inmates who came into contact with that Deputy have been quarantined. Id. Defendant argues that this single positive test will necessary result in all inmates at DOC becoming infected. Def. Motion, at 3.

Whereas Defendant views this as a sign of disarray at DOC, it is, in reality, an example of an effective COVID-19 protocol in action. Upon realizing that inmates may have been exposed to the Deputy, DOC ensured that every possibly-exposed inmate was quarantined to prevent the exposure of other inmates. The United States is aware that, of the quarantined inmates, a single inmate became symptomatic. The symptomatic inmate tested negative for COVID-19. Nevertheless, all potentially-exposed inmates remained in quarantine in order to ensure that other inmates are neither exposed nor infected by an inmate who might have been infected by the Deputy. The quarantine has since been lifted, and the inmates have been examined pursuant to D.C. health department policy. As of the filing of this opposition, there are no known inmates in custody within DOC who have tested positive for the virus and the internal quarantine has been

lifted. Though Defendant may scoff at their efforts, Def. Supp., at 1, DOC is managing this situation and has effectively prevented infection from reaching their population.

In addition to snubbing DOC's successful implementation of its COVID-19 protocol, Defendant's motion fails to address that case law from this District that is directly contrary to his request. See, e.g., United States v. Parker, 517 F. Supp. 2d 375, 377 (D.D.C. 2007). In Parker, Judge Huvelle correctly noted held that a defendant's medical conditions, including diabetes, asthma and hypertension—and the accompanying need for medication and treatment for those ailments—cannot be dispositive in considering motion for release. Id. Rather, such ailments must be weighed in considering a defendant's "history and characteristics," which must then be weighed against the remaining Section 3142(g) factors. Id.; 18 U.S.C. § 3142(g).

Defendant's motion also fails to consider, or analyze, cases in Courts specifically rejected "potential COVID-19 exposure" as a basis for pretrial release. See United States v. Hill, Case No. 19-cr-260 (APM) (D.D.C). On the same day that Defendant filed his emergency motion, Judge Mehta rejected defendant Hill's motion for pretrial release without a hearing, noting that:

> Defendant's release would present a danger to the community and that there is no condition or combination of conditions that would reasonably assure the community's safety. Although the court recognizes the danger presented by the coronavirus outbreak, and that older populations are more vulnerable, on balance release is not warranted at this time. The Department of Corrections is taking precautions to protect the inmate population, and there is not any reported case within the inmate population (to the court's knowledge). The court is prepared to reconsider this order should conditions change at the jail.

Id., Minute Order, March 19, 2020.

Opinions filed in neighboring Districts are in accord. See, e.g., United States v. Martin, ___ F. Supp. 3d ___, ___, 2020 WL 1274857, *2 (D. Md. March 17, 2020). In Martin, Judge Grimm noted that, although the federal judiciary "takes this [COVID-19] health risk extremely

7

seriously," the law requires that "resolving . . . an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act." Id. at *3. In addressing a nearly identical motion to Defendant's, Judge Grimm refused to alter Martin's bond status Martin at this time. Judge Grimm specifically considered Martin's risk of contracting COVID-19 in pretrial detention, as well as the fact that Martin suffers from health ailments.[4] Judge Grimm held that those factors were "insufficient to rebut the proffer by the Government that the correctional and medical staff at [the local detention facility] are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus." Id. at *4 (emphasis added).

Judge Grimm also took issue with Martin's suggestion that location monitoring would ensure both his presence in Court and the safety of the community — an argument that Defendant also raises. Id.; see also Def. Motion, at 3. Judge Grimm correctly noted that location monitoring "is not a limitless resource, nor its installation and monitoring by United States Pretrial Services officers without risk to those personnel . . . given the current recommendations regarding implementation of social distancing." Martin, ___ F. Supp. 3d. at ___, 2020 WL 1274587, at * 4.

As this Court is aware, if Defendant's request to be placed on HISP is granted, he will be placed on location monitoring and required to check in daily with a Pretrial Services officer. Defendant will also be required to appear in person for urinalysis at regular (and random) intervals. Thus, if Defendant is released, he would not be quarantined in isolation – he would continue to have interactions with Pretrial Services staff.

---

[4] Whereas Defendant provides only unconfirmed speculative hearsay regarding potential respiratory issues, Martin was known to suffer from asthma, high blood pressure, and diabetes.

### III. No condition, or combination of conditions, will reasonably assure Defendant's appearance as required and the safety of the community.

Even if the Court were to assume that DOC might ultimately become affected by COVID-19, Defendant has not offered evidence that his personal risk of contracting COVID-19 in DOC necessitates his release. More importantly, just 12 days ago this Court held that no combination of conditions could ensure the safety of the community if Defendant were released. Neither Defendant, nor the crimes with which he is currently charged, are less inherently-dangerous on March 23 than they were on March 11.

On the other hand, the United States has learned since March 11 that Defendant is an even greater risk of flight than previously believed. The United States has recently become aware that Defendant maintains a fraudulent California driver's license in the name of his alias, "Brody Moss." Consequently, should Defendant be released pending trial, he will have immediate access to fraudulent identification and his drug-dealing proceeds, with nothing tying him to the District of Columbia but a twenty-five year mandatory-minimum prison sentence.

Defendant was able to use the skills he developed as a police officer in the Marine Corps to avoid detection of his methamphetamine-distribution enterprise. Indeed, he was only caught because he made a controlled sale to a trusted confederate who was, unbeknownst to Defendant, cooperating with federal agents. Defendant likely believes that he could use those same skills, in conjunction with fraudulent identification and his drug dealing proceeds, to slip the net of Pretrial Services. His odds of doing so are undoubtedly increased now that location monitoring and other Pretrial-Services resources are stretched even more thinly than usual.

**CONCLUSION**

Defendant poses both a danger to the community and a risk of flight, and this Court has already concluded that HISP will not ensure his presence or the safety of the community. The United States appreciates the gravity of this global pandemic and is committed to ensuring the safety and health of inmates like Defendant. DOC is also committed to inmate safety, and has implemented a detailed protocol to prevent widespread COVID-19 infection in their facilities.

Should circumstances change at DOC, Defendant may again request reconsideration of his bond conditions. At this time, however, DOC appears dedicated and willing to address this public health crisis. Given the plans in place at the DOC, the lack of any confirmed cases, and the danger that Defendant represents to the community – the same community that is also affected by this virus – the United States respectfully submits that 18 U.S.C. § 3142 continues to weigh heavily in favor of pretrial detention.

WHEREFORE, Defendant's "Emergency Motion to Reconsider Detention Order" should be DENIED.

> Respectfully submitted,
>
> TIMOTHY J. SHEA
> United States Attorney
> D.C. Bar No. 437437

By: */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime & Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on March 23, 2020.

By:     */s/ James B. Nelson*
        JAMES B. NELSON
        D.C. Bar No. 1613700
        Assistant United States Attorney
        Violent Crime & Narcotics Trafficking Section
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-6986
        james.nelson@usdoj.gov