UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:20-CR-55 (TFH) |
| | : | |
| JACOB JORDAN | : | Status Hearing: April 17, 2020 |

**REPLY TO GOVERNMENT'S OPPOSITION**

    The defendant, Mr. Jacob Jordan, through undersigned counsel respectfully requests that this Honorable Court grant Mr. Jordan's Emergency Motion to Review Pretrial Detention. In support of this Motion, undersigned counsel states the following:

1. As of April 3, 2020, 12 inmates have tested positive for Coronavirus at the D.C. Jail. *See D.C. Department of Corrections Reports 12 in Custody Positive for COVID-19*, NBC (Apr. 2, 2020), https://www.nbcwashington.com/news/dc-department-of-corrections-reports-8-in-custody-positive-for-covid-19/2261454/.

2. Having spoken to Mr. Jordan and some of Mr. Jordan's friends, who have remained in communication with him, undersigned counsel understands that the conditions at the jail have deteriorated significantly. Upon information and belief, the jail is not disinfecting the cells of sick inmates, it was announced that the general population will not have access to the infirmary, medication is not being distributed, a fire was started on Mr. Jordan's cell block, Mr. Jordan has been robbed through threats of violence twice, Mr. Jordan's food is being stolen form him, Mr. Jordan still is exhibiting flue symptoms, and Mr. Jordan has only had the ability to shower twice in over a month.

3. Sadly, some of this information is in keeping with the reports about the jail that have now made their way into the news. It seems the conditions at the jail have deteriorated rapidly.

In response to deteriorating conditions, the ACLU and D.C. Public Defender Service have filed a lawsuit the Department of Corrections over its failure to protect inmates. *See public Defender Service, ACLU-DC Challenge D.C. Jail's Failure to Protect Incarcerated Individuals from COVID-19 Pandemic* (March 30, 2020), https://www.aclu.org/press-releases/public-defender-service-aclu-dc-challenge-dc-jails-failure-protect-incarcerated.

4. In a recent case in this courthouse, Judge Moss released a person pending sentencing for distribution of child pornography under 18 U.S.C. § 3145(c), which allows judicial officers to release defendants detained pending sentencing given a showing of "exceptional reasons". *See Harris*, 2020 U.S. Dist. LEXIS 53632 at *8. In that case, the government conceded that COVID-19 broadly constituted an "exceptional reason." *See id.* at * 15. Instead, the government argued that "the pandemic does not constitute an exceptional reason to release a particular person, unless that person is somehow uniquely affected by the health crisis." *Id.* That court rejected the requirement of certain and specific risk to an individual before release could be appropriate. *See id.* at *16 ("Since the Government urged the Court to wait and see, at least one person at the D.C. jail has tested positive for the virus. The Government is nonetheless right that we do not know with any certainty whether [the defendant] will contract the virus if he remains at the D.C. Jail, and if he does, we do not know whether he will suffer from any severe symptoms. But uncertainty is endemic in the present circumstances, and that uncertainty cannot preclude courts from acting until the damage has been done.").

5. Judge Moss based his description of COVID-19's impact on the jail on several affidavits submitted by the defense in that case (and attached here):

> COVID-19 poses a unique and serious risk to inmates and workers in detention facilities. Facilities, including jails, prisons and other closed settings are associated with high transmission probabilities for infections diseases. A number of features of these facilities can heighten risks for exposure, acquisition, transmission, and clinical complications of these infectious diseases. These include physical/mechanical risks such as overcrowding, population density in close confinement, insufficient ventilation, shared toilet, shower, and eating environments and limits on hygiene and personal protective equipment such as masks and gloves in some facilities. …Infections that are transmitted through droplets, like COVID-19, are particularly difficult to control in detention facilities as 6-foot distancing and proper decontamination of surfaces is virtually impossible.

*United States v. Harris*, 2020 U.S. Dist. LEXIS 53632 *1, *5-*6 (D.D.C. March 27, 2020) (quotations and citations omitted).

6. Health guidance is the same for jails as it is for the community at large – the primary method of fighting coronavirus is limiting exposure. *See* Beyer Decl. ¶17 ("While every effort should be made to reduce exposure in detention facilities, this may be extremely difficult to achieve and sustain. It is therefore an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible."); Greifinger Decl. ¶13 ("Even with the best-laid plans to address the spread of COVID-19 in detention facilities, the release of high-risk individuals is a key part of a risk mitigation strategy."); Stern Decl. ¶9 ("Additionally, the release of detainees who present a low riks of harm to the community is an important mitigation strategy as it reduces the total number of detainees in a facility."); Letter From Group of Concerned Health Professionals 1 (pleading to Maryland judges to "[i]mmediately implement community-based alternatives to detention to alleviate potential exposure to COVID-19 in jails" and "[i]ncarcerate as few people as possible").

7. In response to these failures, the D.C. Public Defender Service and the D.C. branch of the American Civil Liberties Union (ACLU-DC) have sued the director of the Department of

Corrections and the warden of the D.C. Jail. *See Edward Banks v. Quincy Booth*, 1:20-cv-849 (D.D.C.). In the Plaintiff's Emergency Motion for Temporary Restraining Order, the plaintiffs specifically requested intervention on the basis of the Department of Corrections failure to institute necessary safety precautions. *See Banks*, 1:20-cv-849, Mot. For Temp. Restraining Order 9. As part of their evidence, the plaintiffs hired Dr. Jamie Meyer to make an assessment of DOC's policies. Dr. Meyer noted was that placing people in isolation in a jail does not prevent the spread of a disease that is transmitted through water droplets because air continues to flow through the isolation room and into the rest of the facility. *See* Meyer Aff. ¶12. Dr. Meyer also noted:

> now that there is at least one positive case of COVID-19 within the CDF and CTF facilities, the chances are extremely high that most or all of the other inmates of, visitors to, and employees at the facility will contract it as well…because of the high likelihood that inmates, visitors, and employees of CDF and CTF will contract COVID-19, combined with the state of limited medical care for inmates, any inmate of these facilities who contract COVID-19 faces a serious and substantial risk of death."

*See* Meyer Aff. ¶28.

8. In denying a motion for release on the basis of COVID-19, Judge Ketanji Brown Jackson emphasized the need to show a medical impact to succeed either in reopening the detention hearing under 18 U.S.C. § 3142(f) or in showing the need for temporary release under 18 U.S.C. § 3142(i). *See United States v. Lee*, 19-cr-298-KBJ, Order (ECF #25) 2 ("[T]his Court has concluded that (1) the new information on the COVID-19 pandemic does not materially bear on any of the detention factors set forth in 18 U.S.C. § 3142(g); and (2) the generalized increased risk of harm to detainees does not yet warrant release of healthy individuals who would otherwise have been detained."). However, Judge Jackson envisioned a scenario where that assessment might change based on the jail's inability to

protect inmates. *See id.* at 14 ("Because the Court is mindful that both the conditions in the D.C. jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if – at some pint in the future – it becomes clear that DOC is unwilling or unable to protective individuals in its custody from contracting the disease."). Even if this Court accepted Judge Jackson's requirement of an underlying health concern to reopen under 3142(f), Mr. Jordan compares favorably with the case addressed in *Lee*. Because Mr. Jordan's detention determination was a "close call" and Mr. Jordan's underlying health considerations as well as his lack of a criminal history suggest that he is a appropriate for release, taking into consideration the jail's failed response to COVID-19 and its inability to provide the medical services he needs.

9. However, undersigned counsel submits that conditions at the jail indicate that "DOC is unwilling or unable to protect individual in its custody from contacting the disease", as Judge Jackson warned. As Dr. Meyer noted, "now that there is at least one positive case of COVID-19 within the CDF and CTF facilities, the chances are *extremely high that most or all of the other inmates* of, visitors to, and employees at the facility *will contract it as well*." *See* Meyer Aff. ¶28 (emphasis added).

10. In the alternative, this Court could release Mr. Jordan under section 3142(i), until the conclusion of the health crisis, for the same reasons previously stated.

/s/ Jon w. Norris
Jon W. Norris, D.C. Bar No. 426105
Attorney for Jacob Jordan
The Law Offices of Jon W. Norris
503 D Street, NW, Suite 250
Washington, DC 20001
Tel: (202) 371-0300
Fax: (202) 842-2627